# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

v.                                        Case No. 10-C-0853

THRIVENT FINANCIAL FOR LUTHERANS,

        Defendant.

## DECISION AND ORDER

Plaintiff Equal Employment Opportunity Commission (EEOC) alleges that Thrivent Financial for Lutherans (Thrivent) violated section 102(d)(4) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(d)(4)(2006), by disclosing confidential medical information about Gary Messier to his potential employers. Both sides have filed motions for summary judgment on the threshold issue of whether Thrivent received Messier's medical information through a medical inquiry, as defined by section 102(a). For the reasons set forth below, I conclude that Thrivent did not receive Messier's medical information through a medical inquiry. Accordingly, the EEOC's allegation that Thrivent violated section 102(d)(4) is fatally undermined. Defendant's motion for summary judgment will be granted and the EEOC's motion denied.

## BACKGROUND

The following facts are from the parties' Stipulated Findings of Fact for Summary Judgment Motions. ("SFF," Dkt. 12.) In July 2006, Omni Resources, Inc. (Omni), a technology consulting agency, hired Messier to work as a temporary programmer for Thrivent in Appleton, Wisconsin,

pursuant to a consulting services agreement between Thrivent and Omni. (SFF at ¶ 3.) Thomas Brey was Messier's account manager at Omni, and John Schreiner was the manager of the Thrivent department to whom Messier was assigned. (SFF at ¶¶ 6-7.)

On November 1, 2006, Messier did not report to work at Thrivent. He did not contact Schreiner, Brey, or anyone else to inform them that he would not be at work. (SFF at ¶ 9.) When Messier did not report to work, Schreiner called Brey at Omni looking for Messier. Brey then sent Messier the following email:

> Gary,
>
> Give us a call, and give John [Schreiner] a call. We need to know what's going on.
>
> John called here looking for you.

(SFF, Ex. A.) At 4:53 PM that same day, Messier sent the following email to Brey and Schreiner:

> Tom/John
> I've been in bed all day with a severe migraine. Have not had one this severe in over six years. Three doses of Imitrex today and I am finally able to function. Sorry for the very late reply but when I get migraines of this severity I am bed ridden until I can get them to a level so I can function. People have many medical conditions that are not obvious on the surface. They struggle with them every-day and try to get thru life one day at a time. I've had these migraines since a major car accident in 1984. Because this was a head on at 50 miles an hour I am very lucky to have lived thru it. But these migraines are an end result of the head trauma that I experienced that day. I have been waiting for the medical field to come up with a solution ever since. I am attending a few sessions, this coming Saturday, in a seminar sponsored by Theda-Care on Brain & Spine conditions. Hopefully this may provide the information that I have been searching for to help alleviate this situation. The medical field has come a long way since 1984. I am currently reaping some of the benefits to help control this problem with the medication regiment that I am currently on. At least I am functional most days but when I have one of the severity I had today do not expect any response from me or even a phone call as the pain level is so severe that it puts most people in the hospital. I have been dealing with this pain for a long time and I have found the best way to deal with it is to let it run its course. Probably a lot more than either of you wanted to know but I want to be totally honest with both of you. If all goes well I will be in tomorrow on schedule.

2

> I hope this answers your concerns and that I am fully committed to Thrivent and Omni thru the remainder of my contract.
> Gary

*Id.* Brey replied to Messier by email, stating that Messier should "[g]et better," that "John called out of concern for [Brey's] well being" and that Brey was also concerned because Messier was "very good about notifying us when you are going to be out." *Id.* Brey did not include Schreiner on this final email. *Id.*

Messier quit his job with Omni and Thrivent on or about December 4, 2006. (SFF at ¶ 14). He then began looking for other employment, but suspected that Schreiner was providing a negative reference to his prospective employers. Based on these suspicions, Messier hired Reference Matters, Inc., a reference-checking agency. (SFF at ¶ 16). On January 10, 2011, a representative of this agency called Schreiner at Thrivent and Schreiner disclosed information about Messier's migraine condition to this representative. (SFF, Ex. B.)

## ANALYSIS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are reviewed in the light most favorable to the non-movant. *Reliance Standard Life Ins. Co. v. Lyons*, 756 F. Supp. 2d 1013, 1018 (N.D. Ind. 2010). "Once the moving party meets its burden, summary judgment is proper if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007)(internal quotation and citation omitted). Further, "[t]his standard applies when cross

3

motions for summary judgment are filed." *Novak v. Nicholson*, 231 Fed. Appx. 489, 491 (7th Cir. 2007)(internal quotation and citation omitted).

Both sides agree to the facts provided about the communications between Messier, Schreiner, and Brey on November 1, 2006, as well as the subsequent communication between Schreiner and Reference Matters, Inc. The threshold issue on summary judgment is whether the information Schreiner acquired about Messier's migraine condition was the result of a medical inquiry as described in section 102(d) of the ADA.

    a. *ADA Confidentiality Provisions*

Section 102(d)(4)(A) prohibits employers from making disability-related inquiries "unless such . . . inquiry is shown to be job-related and consistent with business necessity."[1] § 102(d)(4)(A); 42 U.S.C. § 12112(d)(4)(A)(2006). Employers may make "inquiries into the ability of an employee to perform job-related functions," but medical information obtained from such inquiries is subject to specified confidentiality requirements. 102(d)(3)-(4); 42 U.S.C. §§ 12112(d)(3)-(4). Although the Seventh Circuit has not addressed this issue directly, other courts have consistently held that the confidentiality requirements of section 102(d) do not protect medical information that is voluntarily disclosed by the employee and, thus, is not acquired as a result of a medical inquiry by the employer. *See Equal Emp't Opportunity Comm'n v. C.R. England, Inc.*, No. 09-4207, 2011 WL 1651372, at *13 (10th Cir. May 3, 2011) (In sum, if an employer discloses medical information that was voluntarily offered by an employee—outside of the context of an authorized employment-related medical examination or inquiry—then the employer is not subject to liability under § 102(d).");

---

[1] The statutory language refers to "a covered entity," which is defined as "an employer, employment agency, labor organization, or joint labor-management committee." § 101(5)(a); 42 U.S.C. § 12111(5)(a). Even accepting the EEOC's assertion that Brey was acting as an agent of either Schreiner or Thrivent and thus qualifies as "a covered entity," for these purposes, the court finds that neither Schreiner *nor* Brey made a medical inquiry.

4

*Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (same); *see also Sherrer v. Hamilton Cnty. Board of Health*, 747 F. Supp. 2d 924, 931 (S.D. Ohio 2010); *Kingston v. Ford Meter Box Co.*, No. 3:07-CV-270 RM, 2009 WL 981333, at *9 (N.D. Ind. Apr. 10, 2009).

The EEOC argues that, as a remedial statute, the ADA should be interpreted as liberally as necessary to serve its remedial purpose. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 94 (3d Cir. 2011). However, even the EEOC does not suggest that the court should construe the ADA so broadly as to protect disclosures which are not "inquiries into an employee's ability to perform job-related functions." § 102(d)(4)(B); 42 U.S.C. § 12112(d)(4)(B). Under its plain meaning, section 102(d)(4) protects only that information which an employer acquires through a medical inquiry or a medical examination. The statute focuses on the employer's active role in the disclosure and thus does not protect *any* disclosure of medical information to an employer no matter how it arises; only those disclosures which the employer obtains through a "medical examination" of the employee or an inquiry "as to whether such employee is an individual with a disability or as to the nature or severity of the disability" are protected. § 102(d)(4)(A).

 b. *Medical Inquiry*

Thrivent argues it did not make an "inquiry into the ability of [Messier] to perform job-related functions," and instead that Messier's disclosure of medical information to Schreiner and Brey was voluntary. Accordingly, Thrivent argues that the confidentiality requirements of section 102(d)(4) do not apply to this information. The Court agrees. Both parties cite a number of cases distinguishing between a medical inquiry by an employer and a voluntary disclosure of medical information by an employee. The four cases described below outline the boundaries of the case law on this distinction. As described in detail below, the facts of the present case are similar to those

5

in *Sherrer v. Hamilton County Board of Health*, 747 F. Supp. 2d 924, 927 (S.D. Ohio 2010), and *Kinston v. Ford Meter Box Co.*, *Kingston*, 2009 WL 981333, at *1, in which the court found the employees had made voluntary disclosures, and the facts here are distinguishable from *Doe v. United States Postal Service*, 317 F.3d 339, 341 (2003), and *Fischer v. Harvey*, No. 1:05-CV-102, 2006 WL 2370207, at *5 (E.D. Tenn. Aug. 14, 2006), in which the court found the employers had made medical inquiries.

First, in *Sherrer*, the plaintiff filed a request for leave with her employer to attend a doctor appointment. *Sherrer*, 747 F. Supp. 2d at 927. Upon returning to work from her appointment earlier than expected, Sherrer went to her supervisor's office to adjust her leave form accordingly. *Id.* While there, her supervisor asked, "Is everything okay?" *Id.* Sherrer responded by disclosing to her supervisor that she had a lump in her breast and might need a biopsy. *Id.* The court held that Sherrer's disclosure was voluntary and was not made in response to a medical inquiry. *Id.* at 934.

In *Kingston*, the plaintiff informed his supervisor of a medical condition after his supervisor told him he needed spend more time on the floor of the manufacturing plant. *Kingston*, 2009 WL 981333, at *1. Kingston argued that his disclosure was necessary to inform his employer of his disability and request reasonable accommodation. *Id.* at *10. However, Kingston disclosed his condition to the plant nurse and his supervisor before initiating any discussions about reasonable accommodation. The court held that Kingston's disclosure was voluntary and not the result of an inquiry by his employer, as he was not required to make disclosures to either the nurse or his supervisor. *Id.* at *11.

In *Doe,* the plaintiff missed several weeks of work due to an AIDS-related illness. *Doe*, 317 F.3d at 341. Doe's supervisor sent him a letter warning that he could face disciplinary action for

being absent from work without leave unless he submitted forms explaining "the nature of [his] illness." *Id.* The letter also indicated that Doe may qualify for leave under the Family and Medical Leave Act (FMLA) and included the appropriate FMLA forms. *Id.* Doe chose to apply for FMLA leave and provided the required medical information on these forms, which he then submitted to the Postal Service. *Id.* The court held that Doe's medical disclosure on the FMLA form was "clearly a response to an employer inquiry" and was not voluntary. *Id.* at 344. Despite the fact that Doe's request for FMLA leave could arguably be considered voluntary on its own, the court saw the requirement that Doe submit supporting medical documents with his request as a medical inquiry. *Id.* Ultimately, the court thought employees should not have to choose between receiving statutory entitlements to FMLA leave and disclosing medical information that is not protected by confidentiality requirements. *Id.*

Finally, in *Fisher*, the plantiff's employer required him to submit doctors' notes with his requests for leave, providing "the specific nature of [his] illness or injury that prevented [him] from reporting to work." *Fisher*, 2006 WL 2370207, at *5. The court held that by requiring these kinds of detailed doctor statements, the employer was making a medical inquiry under section 102(d)(4)(B). *Id.*

The EEOC argues, based on several of these cases and others, that the distinction between a voluntary disclosure by an employee and a disclosure as a result of a medical inquiry by an employer turns on which party initiates the interaction. This assertion is not supported by the case law the EEOC cites. In *Sherrer*, the employer initiated the interaction by asking, "Is everything okay?" *Sherrer*, 747 F. Supp. 2d at 927. Nonetheless, the court found this inquiry did not constitute a medical inquiry under section 102(d)(4) because the question was not about a medical condition

7

or ability to perform job functions, nor did it require the employee to provide any medical information. *Id.* at 934. As the EEOC quotes from *Sherrer*, the ADA confidentiality provisions "do not govern voluntary disclosures of medical information initiated by the employee." *Id.* at 931. However, the distinction between the EEOC's language (*interactions* initiated by the employee) and the court's language in *Sherrer* (*disclosures of medical information* initiated by the employee) is an important one. As the cases discussed make clear, an employee's disclosure is voluntary if the disclosure is not preceded by any request or demand for medical information by the employer. Which party initiates the conversation that leads to a disclosure is not relevant; which party initiates or requests the employee's actual disclosure of medical information is determinative.

The instant case provides facts very similar to those in *Sherrer*. On the day Messier did not show up to work as scheduled, Schreiner initiated an interaction with Brey, who then contacted Messier. In his e-mail, Brey did not ask Messier about a medical condition, nor are there facts on the record to suggest that either Brey or Schreiner had reason to know that Messier's absence was due to a medical condition. Brey was clearly trying to determine an absent employee's whereabouts, stating only "[g]ive us a call . . . . We need to know what's going on." Here, the EEOC advances an overly broad definition of a medical inquiry. Given the vast number of reasons an employee could miss work without informing his employer, it seems unreasonable to assume that an employer checking in on his absent employee has the intent to request or acquire medical information.

The EEOC cites *EEOC v. Ford Motor Credit Co.* for the proposition that "whether or not an employee *can* show up for work is quite clearly a job-related question." *EEOC v. Ford Motor Credit Co.*, 531 F. Supp. 2d 930, 939 (M.D. Tenn. 2008)(emphasis added). As in *Doe*, however,

the plaintiff in *Ford Motor Credit*, made the disclosure as a precondition for obtaining FMLA leave. *Id.* There is no evidence that Messier sought FMLA leave here.

There is a difference between an employee's general ability to show up for work and whether he actually does so. Schreiner and Brey had no reason to be concerned about Messier's physical ability to appear at work—he seems to have done so satisfactorily for the length of his employment up to that point. Rather, as would be expected from any employer, they were seeking an explanation for Messier's un-excused absence from work on this particular day.

The EEOC guidelines, which are not controlling on this Court, prohibit questions that are "*likely* to elicit information regarding a disability." *Horgan v. Simmons*, 704 F. Supp. 2d 814, 820 n.5 (N.D. Ill. 2010), *citing* "Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the ADA" (July 27, 2000) at 3. While it was certainly foreseeable that Messier *might* have responded by informing Brey and/or Schreiner that he was taking a sick day, the EEOC provides no reason to believe Brey's email was more *likely* to elicit information about a disability or medical condition than information about transportation problems, a family emergency, or any other situation preventing him from being at work. There is not even evidence that Messier himself perceived Brey's email as a request for actual medical information. When he could have simply responded, "I'm taking a sick/personal day," Messier instead provided an extensive medical history, noting in his email to Schreiner and Brey that the information he provided was "[p]robably a lot more than either of [them] wanted to know . . . ."

Unlike the employers in *Doe* or *Fisher*, Brey and Schreiner did not specifically request or require that Messier disclose any information about a medical condition, nor did they ask him anything that was particularly likely to elicit specific information about a medical condition.

9

Messier's disclosure was, therefore, voluntary, and was not in response to a medical inquiry by either Schreiner or Brey as defined by section 102(d)(4).

## CONCLUSION

Based on the stipulated facts in this case, no reasonable finder of fact could find that Messier's disclosure was made in response to a medical inquiry by either Schreiner or Brey. Accordingly, I conclude that the medical information he disclosed was not subject to the ADA confidentiality requirements in section 102(4), and Schreiner's subsequent disclosure of this information to Reference Matters, Inc.'s representative or any other individual could not have been in violation of this statute. Therefore, Defendant's motion for summary judgment in this cause of action is **granted**. Plaintiff's motion for summary judgment is **denied**. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

Dated this 15th day of June, 2011.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge